HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

THE UNITED STATES FOR THE USE OF
NORTH COAST ELECTRIC COMPANY,

Plaintiff,

v.

SAFARI ELECTRIC, LLC, *et al.*,

Defendants.

Case No. 2:19-cv-00763-RAJ

ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's First Motions for Partial Summary Judgment (Dkt. # 37). Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, the motion is **DENIED**.

## II. BACKGROUND

Defendant RORE Inc. ("RORE"), a general contractor, had a federal construction project at Substation 6A of the Bangor Naval Base in Bremerton, Washington ("Substation 6A Project"). Dkt. # 40 ¶ 2. To secure the project, RORE furnished a Miller Act payment bond. Id. ¶ 3. RORE in turn contracted with Defendant Safari

ORDER – 1

Electric LLC ("Safari") to provide RORE with "electrical contracting services to the Substation 6A Project." *Id.* ¶ 2. Safari then in turn contracted with Plaintiff North Coast Electric Company ("North Coast"), a distributor of electrical materials. *Id.* ¶ 4; Dkt. # 29 ¶ 2. At issue in this motion is Safari's agreement with North Coast. Dkt. # 37.

Safari and North Coast entered a contract to replace the "15Kv Switchgear" for the Substation 6A Project. Dkt. # 40 ¶ 4. A "switchgear" is a set of "complex controls and switches for controlling the flow of electricity." Dkt. # 29 ¶ 6. Under their agreement, North Coast would sell to Safari materials and services, including among other things a switchgear, "[e]ngineering," "[f]actory [t]esting," and "[f]ield [s]upervision." Dkt. # 40-1 at 2, 4; *see also* Dkt. # 29 ¶¶ 6-7; Dkt. # 40 ¶¶ 4-6. The parties entered several agreements to that end. Dkt. # 29 ¶¶ 3-6; Dkt. # 40 ¶¶ 5-6. Which agreements and terms are controlling is in dispute. *Compare* Dkt. # 37 *with* Dkt. # 39.

North Coast indeed supplied some of the materials, but Safari did not pay the full contract price. Dkt. # 30 ¶¶ 7, 13; Dkt. # 40 ¶ 26. Given Safari's failure to pay, in January 2019, North Coast notified Safari and RORE of its Miller Act bond claim. Dkt. # 30-5.

A month later, on February 7, 2019, Safari sued North Coast for breach of contract and declaratory relief in Kitsap County Superior Court. Dkt. # 41 ¶ 2; *see also* Dkt. ## 41-1, 41-2. More than three months after that, on May 21, 2019, North Coast sued Safari, RORE, and several other Defendants in this action. Dkt. # 1.

Given the pending, first-filed state court action, Defendants moved to dismiss, or in the alternative stay, this action. Dkt. # 16. The Court granted the motion in part and denied it in part. Dkt. # 47. The Court dismissed all Miller Act bond claims, but granted North Coast leave to amend two, its Bangor Substation 6A and Joint Base Lewis-McCord Miller Act bond claims. *Id.* And despite the ongoing proceeding in state court, the Court denied Defendants' request to stay this action. *Id.* Soon after, North Coast filed its Third Amended Complaint. Dkt. # 48.

ORDER – 2

This matter now comes before the Court on North Coast's motion for partial summary judgment. Dkt. # 37. According to North Coast, it "seeks relief only against one party, Defendant Rore, on only one of the multiple contracts in dispute." *Id.* at 4. It also seeks several "motions for declaratory relief" regarding the formation and interpretation of the parties' various contracts. *Id.* The motion fully briefed and ripe for adjudication. Dkt. ## 39, 44.

### III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp.*, 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial to defeat the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150-51 (2000).

### IV. DISCUSSION

A.     **Miller Act**

To prevail under the Miller Act, a material supplier needs to prove four elements:

(1) the materials were supplied in prosecution of the work provided for in the contract;

ORDER – 3

(2) he has not been paid;

(3) he had a good faith belief that the materials were intended for the specified work; and

(4) the jurisdictional requisites were met.

*U.S. ex rel. Martin Steel Constructors, Inc. v. Avanti Constructors, Inc.*, 750 F.2d 759, 761 (9th Cir. 1984).

For the first three elements, there appears to be no dispute. RORE and Safari entered a contract to replace the 15Kv Switchgear at Substation 6A on the Bangor Naval Base in Bremerton, Washington. Dkt. # 40 ¶ 2. In turn, Safari contracted with North Coast. *Id.* ¶ 4; Dkt. # 29 ¶ 6. Under their agreement, North Coast sold to Safari materials and services, including among other things a switchgear, "[e]ngineering," "[f]actory [t]esting," and "[f]ield [s]upervision." Dkt. #40-1 at 2, 4; *see also* Dkt. # 29 ¶¶ 6-7; Dkt. # 40 ¶¶ 4-6. The parties do not dispute that North Coast supplied at least some of those materials, satisfying the first element. Dkt. # 30 ¶ 13. There is also no dispute that North Coast has not been paid the full contract price, satisfying the second. *Id.* ¶ 7; Dkt. # 40 ¶ 26. Finally, the parties do not dispute that North Coast had a good faith belief that the materials were intended for the Bangor Substation 6A project.

The fourth element, on the other hand, is in genuine dispute, defeating summary judgment. "Jurisdictional requisites" refer to the "timely notice and filing" requirements under the Miller Act. *Martin Steel*, 750 F.2d at 761; *see also United States ex rel. Hawaiian Rock Prod. Corp. v. A.E. Lopez Enterprises, Ltd.*, 74 F.3d 972, 975 (9th Cir. 1996). Under 40 U.S.C. § 3133, a supplier bringing a Miller Act bond claim must give written notice to the contractor within 90 days from "the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made." The "test to be applied" is "the last date on which work was performed under the contract," not the date "when repairs were made following inspection of the project." *United States ex rel. Ray Weist Const. Co. v. St. Paul Fire &*

ORDER – 4

*Marine Ins. Co.*, 513 F.2d 159, 160 (9th Cir. 1975) (citing *United States ex rel. Austin v. Western Electric Co.*, 337 F.2d 568 (9th Cir. 1964)). The notice requirement is a "condition precedent" to a Miller Act claim, "and no rule of liberality in construction can justify reading out of the statute the very condition which Congress laid down as [a] prerequisite." *U.S. ex rel. Blue Circle W., Inc. v. Tucson Mech. Contracting Inc.*, 921 F.2d 911, 916 (9th Cir. 1990) (quoting *Bowden v. United States ex rel. Malloy*, 239 F.2d 572, 577 (9th Cir 1956)).

The parties agree that North Coast gave notice, but they disagree on when North Coast last performed labor or last supplied materials. On January 4 and 18, 2019, North Coast notified Safari of its Miller Act bond claim. Dkt. # 30-5. Safari says that this notice was well after North Coast last provided labor or materials. Dkt. # 39 at 9-10. Based on North Coast's responses to interrogatories made in another case, Safari argues that North Coast last supplied materials or labor on June 26, 2018. Dkt. # 20 ¶ 10; Dkt. # 20-6 at 14.

In response, North Coast says that these interrogatory answers were "mistaken." Dkt. # 44 at 3. The true last date of labor, it says, was between December 17 and 19, 2018, when North Coast's vendor "inspected the switchgear" and "reinstalled delicate fiber optic cables that had been removed at the factory to prevent damage during shipping and related work." Dkt. # 29 ¶ 6(g); Dkt. # 23 at 18-20. Safari says that it had no knowledge of these services until North Coast made its argument here. Dkt. # 40 ¶ 28. Safari further argues that this work was not part of the original contract, that North Coast has not sought compensation for these services, and that these services were done "to conceal . . . yet another breach of the [c]ontract" by North Coast. *Id.*

If North Coast's version of events is correct, and December 2018 was in fact when it last supplied materials or labor, then its January 2019 notices would be timely. But if Safari's version is correct, and the December 2018 services were for repairs and not contemplated under the original contract, then June 2018 would be when North Coast last

ORDER – 5

supplied materials or labor, and the notices would be untimely. Whether the services done in December 2018 were for work performed under the contract or for repairs is a genuine factual dispute that cannot be resolved by summary judgment.[1] At most, North Coast's evidence explains what services its vendor performed on both days, but it does not explain whether those services were part of the contract or remedial. Dkt. # 23 at 18-20. Given that, North Coast fails to meet its burden that no reasonable trier of fact would disagree that it is entitled to affirmative relief.

### B. North Coast's Remaining "Motions" for "Declaratory Relief"

Besides the affirmative relief it seeks under its Miller Act claim, North Coast brings several "motions" for declaratory relief. Dkt. # 37 at 4. It claims to seek partial summary judgment on several issues regarding contractual formation and interpretation, such as whether any Defendant may assert a "pay-when paid" defense, an offset defense, or a defense that North Coast failed to register as a "contractor." *Id.* at 2-3. North Coast does not, however, move for summary judgment under its breach of contract claims. *See* Dkt. # 37. Indeed, it does not identify any claim at all. *See id.*

In moving for summary judgment on these issues, North Coast fails to comply with one of Rule 56's most basic requirements. Under Rule 56, a party moving for summary judgment must "identify[] each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56. North Coast's motion simply fails to identify under which claim or defense it is moving. Its requested "motions" for declarations are untethered to the Third Amended Complaint. For example, North Coast seeks several declarations from the Court regarding the parties' contract formation, interpretation, and performance. Dkt. # 37 at 2-3. Yet in its motion,

---

[1] In its reply, North Coast argues that Defendants' submissions are replete with "evidentiary problems," and it asks the Court to disregard any inadmissible evidence. Dkt. # 44 at 2. To reach its conclusion here, the Court need only consider Shaun Hall's testimony that the December 2018 services were not contemplated in the contract. The Court deems this testimony admissible. To that extent, North Coast's objections are denied.

ORDER – 6

North Coast does not claim to move for summary judgment under its second claim for "Breach of Contract – Bangor Substation 6A." Dkt. # 48 ¶¶ 11-15. Rather, it requests that the Court in the abstract announce "that no defendant may assert any of Safari's offsets and 'back-charges' as a defense to a Miller Act claim as a matter of federal law," among other things. Dkt. # 37 at 3. Because it does not identify a claim or defense under which it is moving for summary judgment, North Coast has failed to comply with Rule 56.

Though not identified in its motion, "Declaratory Relief" is indeed a claim asserted in North Coast's Third Amended Complaint. Dkt. # 48 ¶ 40. But the Court will not presume that this is the claim North Coast is moving under. As explained above, North Coast has not specifically identified this claim in its motion. Further, measuring just one paragraph long, the claim alleges that Safari has historically asserted that it was entitled to certain defenses, such as offset. *Id.* No Defendant, however, has yet mounted such a defense in this action. No Defendant has filed an answer, asserted any affirmative defenses, or plead any counterclaims. The Court will not make broad declarations on contractual obligations and defenses that are not properly before it.[2]

## V. CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's First Motions for Partial Summary Judgment (Dkt. # 37).

DATED this 4th day of May, 2021.

The Honorable Richard A. Jones
United States District Judge

---

[2] Because, at bottom, North Coast has failed to show that it is entitled to summary judgment, the Court need not determine here whether North Coast would be entitled to attorney's fees should it ultimately prevail. Dkt. # 37 at 20.

ORDER – 7